IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BIOIBERICA NEBRASKA, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:18-cv-03133-SAG |
| NUTRAMAX MANUFACTURING, INC., | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Plaintiff Bioiberica Nebraska, Inc. ("Bioiberica Nebraska") filed a one-count Amended Complaint against Defendant Nutramax Manufacturing, Inc. ("Nutramax"), seeking to recover fees for late payments Nutramax made to Bioiberica Nebraska under an alleged contract. ECF 8. On June 11, 2019, Bioiberica Nebraska filed a Motion for Leave to Amend, ECF 21, along with a Memorandum of Law in support thereof, ECF 21-3 (collectively, "the Motion"). Nutramax filed an Opposition on June 25, 2019 ("Opposition"). ECF 22. Bioiberica Nebraska replied on July 8, 2019 ("Reply"). ECF 23. I find that no hearing is necessary. *See* Loc. R. 105.8 (D. Md. 2018). For the reasons that follow, Bioiberica Nebraska's Motion is granted.

## I. FACTUAL BACKGROUND[1]

Bioiberica Nebraska is a subsidiary of, but separate and distinct from, Bioiberica S.A.U., a Spanish corporation located in Barcelona, Spain. ECF 21-1, ¶¶ 2-3. On August 14, 2017, Nutramax executed a Purchase Order with Bioiberica S.A.U. to purchase 18,000 kilograms of chondroitin sulfate according to the Purchase Order's specifications. *Id.* ¶ 5. Bioiberica S.A.U.

---

[1] For the purposes of this Motion, the Court accepts as true the facts alleged in Plaintiff's Second Amended Complaint. *See, e.g.*, *Shields v. Prince George's County*, No. GJH-15-1736, 2016 WL 4581327, at *1 n.3 (D. Md. Sept. 1, 2016).

1

was to ship the chondroitin sulfate in three shipments of 6,000 kilograms each, at a price of $97.00 per kilogram, on January 4, 2018, February 5, 2018, and March 1, 2018. *Id.* Bioiberica S.A.U. shipped the first installment on time, and Nutramax timely paid the invoiced amount, $95.95 per kilogram. *Id.* ¶ 6.

Bioiberica S.A.U. could not timely perform its obligation to ship the second installment of chondroitin by February 5, 2018. *Id.* ¶ 7. Plaintiff Bioiberica Nebraska alleges that Bioiberica S.A.U. assigned and delegated its contractual rights and obligations to Bioiberica Nebraska. *Id.* ¶¶ 8-9. Bioiberica Nebraska shipped the balance of the chondroitin due under the Purchase Order (save 175 kilograms), but Nutramax failed to make timely payments under the two invoices that Bioiberica Nebraska issued ("the invoices"). *Id.* ¶¶ 10-16; *see* ECF 8-4, 8-5. Bioiberica Nebraska claims that, in all, Nutramax incurred $1,001,525.00 in contractual liability to Bioiberica Nebraska. ECF 21-1, ¶ 16. Further, under the terms of the invoices, Nutramax allegedly owes $108,690.34 in late fees because of its failure to timely pay. *Id.* ¶ 20.

Bioiberica initially filed its Complaint against Nutramax on October 10, 2018. ECF 1. On October 16, 2018, however, Nutramax allegedly remitted payment to Bioiberica Nebraska in the amount of $1,001,525.00, its principal obligation under the invoices. ECF 21-1, ¶ 18. Nutramax did not, however, pay the claimed late fees. *Id.* ¶ 20. Accordingly, on October 29, 2018, Bioiberica Nebraska filed an Amended Complaint, within the twenty-one-day grace period that Federal Rule of Civil Procedure 15(a)(1)(A) affords, to remove the claim for the principal amount, leaving only Bioiberica Nebraska's claim for $108,690.34 in late fees. ECF 8.

On November 19, 2018, Nutramax filed a Motion to Dismiss Plaintiff's Amended Complaint for Lack of Standing or Alternatively for Failure to Name a Necessary Party. ECF 15. On May 23, 2019, Judge Russell issued a Letter Order granting Nutramax's motion. ECF 20.

Judge Russell found that because Bioiberica Nebraska's Amended Complaint failed to allege that Bioiberica S.A.U. assigned the Purchase Order to Bioiberica Nebraska, Bioiberica Nebraska did not have standing to sue Nutramax under the Purchase Order. *Id.* at 4. Judge Russell further held that, because Bioiberica Nebraska "d[id] not clearly identify and assert rights under another contract with Nutramax, it fails to state a claim against Nutramax." *Id.* Judge Russell, however, declined to rule on whether Bioiberica S.A.U. could assign the contract, and whether Bioiberica S.A.U. was a necessary party. *Id.* at 4 n.10. Bioiberica Nebraska now seeks leave to file its Second Amended Complaint to include allegations that Bioiberica S.A.U. assigned and delegated the Purchase Order to Bioiberica Nebraska. ECF 21, ¶ 4; *see* ECF 21-1, ¶¶ 8-16, 18-22.

## II.  LEGAL STANDARD

Though Bioiberica Nebraska's claims invoke the Court's diversity jurisdiction, *see* ECF 21-1, ¶ 1, the Court applies federal procedural rules, *see, e.g.*, *Chartis Prop. Cas. Co. v. Huguely*, 243 F. Supp. 3d 615, 622 (D. Md. 2017). Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). This Court retains authority to grant Plaintiff leave to amend its complaint, even after previously dismissing the complaint pursuant to a Rule 12(b)(6) motion to dismiss. *E.g.*, *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir.), *cert. denied sub nom* 139 S. Ct.

607 (2018). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

**III. ANALYSIS**

Defendant Nutramax asserts that all three grounds for denying a motion for leave to amend are present in this case. First, Nutramax argues that Bioiberica Nebraska's amendments are futile because Bioiberica Nebraska's amended claims "cannot withstand Rule 12(b)(6) scrutiny." ECF 22 at 8; *see id.* at 8-10. Second, Nutramax asserts that it will be prejudiced if the Court grants Bioiberica Nebraska leave to amend. *Id.* at 10-11. Finally, Nutramax claims that Bioiberica Nebraska brings its proposed amendments in bad faith. *Id.* at 12-13. Each is addressed in turn.

*A. Futility*

Nutramax first argues the Court is to apply the same standard applied in the Rule 12(b)(6) context, in determining whether Bioiberica Nebraska's proposed amendments are futile. ECF 22 at 7-8. The Court disagrees with this characterization of the governing legal standard. As the Fourth Circuit has stated, a proposed amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510; *see also* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1487 (3d. ed. 2010) ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied." (footnotes omitted)).

This review for futility "does not involve an evaluation of the underlying merits of the case." *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 522 (D. Md. 2014) (quoting *MTB Serv., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Arp. 30, 2013). "To the contrary, '[u]nless a proposed amendment *may clearly be seen to be futile*

4

because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, No. CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (emphasis added) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.), *cert. dismissed*, 448 U.S. 911 (1980))). Recently, this Court discussed the overlap between a court's review for futility under Rule 15 and for failure to state a claim under Rule 12(b)(6):

> There is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Yet the Court need not apply the Rule 12(b)(6) standard when determining whether leave to amend would be futile. The Court applies a much less demanding standard: whether "the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

*Aura Light US Inc. v. LTF Int'l LLC*, Nos. GLR-15-3198 & GLR-15-3200, 2017 WL 2506127, at *5 (D. Md. June 8, 2017).

Thus, it may be within the trial court's discretion to deny leave to amend when it is clear that a claim cannot withstand a Rule 12(b)(6) motion. *See, e.g.*, *Wilson*, 525 F.3d at 376-79 (upholding a district court's denial of leave to amend their False Claims Act claims because the plaintiffs' amendments attempted "to shoehorn what might have been an ordinary FCA claim – and what really is a breach of contract suit – into some sort of fraudulent inducement action. This [the plaintiffs] simply cannot do."); *Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995) (affirming the trial court's denial of leave to amend after the trial court dismissed the complaint under Rule 12(b)(6) based on the United States' sovereign immunity, since the proposed amendments would have also been dismissed under Rule 12(b)(6) on sovereign immunity grounds). As this Court has also suggested, leave to amend may be denied if proposed amendments are mere "[t]hreadbare recitals of the elements of a cause of action" that are clearly insufficient to

5

plead a cause of action under Federal Rule of Civil Procedure 8(a)(2). *Kolb*, 21 F. Supp. 3d at 522 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

That being said, it does not follow that every plaintiff seeking leave to amend their claims must demonstrate that his claims can withstand a Rule 12(b)(6) motion. Such a requirement would render superfluous the Fourth Circuit's definition of a futile claim as one that is "*clearly insufficient or frivolous on its face*," *Johnson*, 785 F.2d at 510 (emphasis added), and would run contrary to the Fourth Circuit's well-established "policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)," *Galustian*, 591 F.3d at 729; *see also Coral v. Gonse*, 330 F.2d 997, 998 (4th Cir. 1964).

Bioiberica Nebraska's request for leave to amend merely corrects deficiencies that Judge Russell previously found in Bioiberica Nebraska's Amended Complaint, and does not add any new claims for relief. *See* ECF 20 at 4; WRIGHT, MILLER, & KANE, *supra*, § 1487. Nutramax, in effect, attempts to accelerate the Court's review of the same assertions that Nutramax made in moving to dismiss Bioiberica Nebraska's Amended Complaint, which Judge Russell declined to rule on. *See* ECF 20 at 4. Those claims are best left addressed, if Nutramax wishes to assert them, on a Rule 12(b)(6) motion, so that the parties may benefit from the Court's review of full briefings specifically addressing those issues.

Instead, the ultimate question here is whether Bioiberica Nebraska's proposed allegations that it was assigned and delegated Bioiberica S.A.U.'s rights and obligations under the Purchase Order are futile. Without commenting on the merits of Bioiberica Nebraska's entitlement to late fees, its request to add the assignment and delegation allegations is not "clearly insufficient or frivolous." *Johnson*, 785 F.2d at 510. Nutramax argues that the allegations are futile because the Purchase Order contained a provision barring Bioiberica S.A.U. from assigning or delegating its

6

obligations to any party without Nutramax's written consent, and Nutramax never consented. ECF 22 at 8-9 (citing Md. Code Ann., Com. Law § 2-210(1) (West 2019)); *see* ECF 8-1 at 8 (the Purchase Order).[2] However, Maryland courts have long held that even where a contractual provision states that it "shall not be varied except by an agreement in writing," the parties can nonetheless waive that provision "by implication as well as by express agreement." *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 79 (1954); *see also, e.g.*, *Hoffman v. Glock*, 20 Md. App. 284, 288 (1974) ("Notwithstanding a written agreement that any change to a contract must be in writing, the parties by subsequent oral agreement and by their conduct may waive the requirements of a written contract."). Bioiberica Nebraska alleges that Nutramax did waive this requirement. *See* ECF 21-1, ¶¶ 8, 10. Because whether Nutramax waived this contractual requirement is a factual question, *see Freeman*, 205 Md. at 80, it is "inappropriate for resolution on a review for futility," *Next Generation Grp.*, 2012 WL 37397, at *4.

Nutramax also argues that Bioiberica Nebraska's amendments are futile because Bioiberica Nebraska relies on language in the invoices it sent to Nutramax for the right to collect late fees. ECF 22 at 9-10. According to Nutramax, these invoice terms did not become a part of the original contract (the Purchase Order between Nutramax and Bioiberica S.A.U.) under section 2-207 of the Maryland Commercial Law Code. *Id.* In other words, Nutramax's argument is that Bioiberica Nebraska's amendments are futile because Bioiberica Nebraska fails to state a claim on the merits. This contention has no bearing on the limited issue of whether Bioiberica Nebraska's proposed allegations about the assignment and delegation of the Purchase Order, which are designed to address the flaw the Court previously found in Bioiberica Nebraska's Amended Complaint, are themselves clearly insufficient on their face or frivolous. Because, as discussed above,

---

[2] Neither party appears to contest that Maryland law applies to Bioiberica Nebraska's claim.

Bioiberica's assignment allegations are not futile, Nutramax's arguments fail. Of course, Nutramax may assert, on a Rule 12(b)(6) motion, that the late fee provisions in the invoices are not binding terms. That argument, however, is not proper at the Rule 15 amendment stage. *See Aura Light*, 2017 WL 2506127, at \*5; *Kolb*, 21 F. Supp. 3d at 522; *see also Galustian*, 591 F.3d at 729 (noting this Circuit's "liberal[]" amendment policy).

### B. Prejudice

Prejudice is "[p]erhaps the most important factor" to consider in ruling on a motion for leave to amend a complaint. *Class Produce Group, LLC v. Harleysville Worcester Ins. Co.*, No. SAG-16-3431, 2018 WL 5785664, at \*3 (D. Md. Nov. 5, 2018) (quoting WRIGHT, MILLER, & KANE, *supra*, § 1487). Prejudice is "often determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427. An amendment can cause undue prejudice when it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] . . . the amendment is offered shortly before or during trial." *Johnson*, 785 F.2d at 510 (citations omitted). Conversely, a proposed amendment carries little prejudice "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427 (citing *Davis*, 615 F.2d at 613).

Nutramax cites three ways in which it would suffer prejudice. First, Nutramax argues it would be prejudiced because it would be forced "to defend itself against claims that are not asserted by the proper party." ECF 22 at 10. According to Nutramax, Bioiberica Nebraska "rejected" Nutramax's offer to consent to an amendment that would add Bioiberica S.A.U. as a plaintiff, who Nutramax claims is the "proper party." *Id.* This rejection will cause Nutramax "to continue to expend time and resources litigating the same standing issue ad nauseam." *Id.* at 10-11. These arguments are unpersuasive. Certainly, any motion for leave to amend that a court grants will

8

cause the opposing party to incur more litigation costs. But here, Bioiberica Nebraska's proposed amendments come before the discovery period, and are not adding entirely new claims for relief. Rather, like in *Edwards v. City of Goldsboro*, the amendments here pertain to "matters already contained in the [previous] complaint," and only seek "to add specificity to those matters." 178 F.3d at 243. "Prejudice to the Defendant[] could hardly flow from such an addition" to Bioiberica Nebraska's Second Amended Complaint. *Id.*

Second, Nutramax asserts that Bioiberica Nebraska is engaging in unfair "gamesmanship." ECF 22 at 11. Nutramax claims that Bioiberica Nebraska is employing a "wait and see" litigation strategy, in which it waits to see if the Court will accept its legal theories and then seeks leave to amend only after the Court rejects them on a Rule 12(b)(6) motion. *Id.* (citing *Adbul-Mumit*, 896 F.3d at 293). Even setting aside the notable factual differences from *Adbul-Mumit* – the plaintiffs there spent an entire calendar year attempting to amend their complaints and received two prior grants of leave to amend before being denied a third – there is no evidence that Bioiberica Nebraska is employing a "wait and see" litigation approach. *See* 896 F.3d at 292-93. Bioiberica Nebraska's amendments are directed towards remedying the critical defect Judge Russell previously found in its Amended Complaint: a lack of factual allegations demonstrating that it had standing to sue under the August, 2017 Purchase Order. *See* ECF 20 at 4; ECF 21-1, ¶¶ 8-16, 19-22. Indeed, Judge Russell's May, 2019 Order explicitly refused to decide whether Bioiberica S.A.U. could assign its obligations under the Purchase Order, or whether Bioiberica S.A.U. was a necessary party. ECF 20 at 4 n.10. Bioiberica Nebraska cannot be faulted for relying on its theory that it was validly assigned the Purchase Order, when the Court has not yet rejected that theory.

Third, Nutramax asserts that it will suffer prejudice because if Bioiberica S.A.U. is not added as a party as Nutramax proposes, then Nutramax will have to resort to the Hague Convention

9

to obtain necessary discovery materials in this litigation, an "unnecessarily burdensome" exercise in terms of time and money. ECF 22 at 11. Yet as the Fourth Circuit explained in *Scott v. Family Dollar Stores, Inc.*, "[A]lthough prejudice can result where a new legal theory is alleged if it would entail additional discovery and evidentiary burdens on the part of the opposing party, this 'basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial.'" 733 F.3d 105, 118-19 (4th Cir. 2013) (quoting *Johnson*, 785 F.2d at 510). Here, discovery has not yet begun, resulting in little, if any, prejudice to Nutramax. Even under the facts alleged in the Amended Complaint, Nutramax was aware that some discovery may be necessary from Bioiberica S.A.U. It cannot now rely on the need to obtain discovery from Bioiberica S.A.U. as a means of preventing Bioiberica Nebraska from correcting the defects in its Amended Complaint and litigating its claims against Nutramax on the merits.

### C. Bad Faith

Finally, Nutramax argues that leave to amend should be denied because Bioiberica Nebraska is acting in bad faith. ECF 22 at 12-13. Nutramax states that Bioiberica Nebraska's counsel is serving as an independent legal expert in an International Arbitration matter between Nutramax and Bioiberica S.A.U. *Id.*; *see* ECF 23 at 18-20. According to Nutramax, Bioiberica Nebraska's counsel only refuses to add Bioiberica S.A.U. as a plaintiff to maintain his status as an independent legal expert in those Arbitration proceedings. ECF 22 at 12-13. If counsel added Bioiberica S.A.U. as a plaintiff, Nutramax argues, then he would lose that independent status, which is why he filed the instant Motion and why it is brought in bad faith. *Id.*

This argument is unpersuasive. Courts typically find that a party acts in bad faith in bringing a motion for leave to amend, for example, when their amendment fails to "advance a colorable legal argument." *McCall-Scovens v. Blanchard*, No. ELH-15-3433, 2016 WL 6277668,

at *8 (D. Md. Oct. 27, 2016); *see Peamon v. Verizon Corp.*, 581 F. App'x 291, 292 (4th Cir. 2014) (finding that a party acted in bad faith by seeking leave to amend "to artificially inflate his damages in order to obtain subject matter jurisdiction"). Furthermore, the earlier in the case the motion for leave to amend is brought, the less likely it is that the motion is brought in bad faith. *See Laber*, 438 F.3d at 427. No bad faith indicators are present here. Bioiberica Nebraska's amendments come very early in the litigation, and as discussed above, are not futile. Whether the International Arbitration proceedings are relevant here or not, the Court can find no bad faith in Bioiberica Nebraska's desire to prosecute its claims alone against Nutramax, given that its reasons for doing so are not futile. *See McCall-Scovens*, 2016 WL 6277668, at *8.

**IV. CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Leave to Amend, ECF 21, is GRANTED. A separate Order is filed herewith.


Dated: October 10, 2019                                                /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge