IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BIOIBERICA NEBRASKA, INC.,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Case No. 1:18-cv-03133-SAG |
| | * |
| **NUTRAMAX MANUFACTURING, INC.,** | * |
| | * |
| Defendant. | * |
| | * |

************

## MEMORANDUM OPINION

Plaintiff Bioiberica Nebraska, Inc. ("Bioiberica Nebraska") filed a one-count Second Amended Complaint against Defendant Nutramax Manufacturing, Inc. ("Nutramax"), seeking to recover fees for late payments Nutramax made to Bioiberica Nebraska under an alleged contract, as well as attorneys' fees and costs incurred in this action. ECF 26. On June 18, 2020, Nutramax filed a Motion to Dismiss Plaintiff's Second Amended Complaint. ECF 40, 40-1 (collectively, "the Motion"). Bioiberica Nebraska opposed, ECF 41, and Nutramax replied, ECF 42. Bioiberica Nebraska has requested a hearing. ECF 41-2. However, this Court finds that the legal issues presented by the Motion are adequately addressed in the parties' briefings, rendering a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018); *see also, e.g.*, *Huff v. U.S. Dep't of Army*, 508 F. Supp. 2d 459, 461 (D. Md. 2007); *Envirotech Chem., Inc. v. Compass Rose Fin. Servs., Inc.*, No. WDQ-07-1616, 2007 WL 9780567, at*1 n.2 (D. Md. Oct. 4, 2007) (deciding, without a hearing, a motion for leave to amend the complaint, and a motion to dismiss, despite the parties' joint request for a hearing). For the reasons that follow, Nutramax's Motion is granted, and the Second Amended Complaint will be dismissed without prejudice.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are derived from Bioiberica Nebraska's Second Amended Complaint and the exhibits incorporated therein, and are accepted as true. Bioiberica Nebraska is a subsidiary of, but separate and distinct from, Bioiberica S.A.U., a Spanish corporation located in Barcelona, Spain. ECF 26, ¶¶ 2-3. On August 14, 2017, Nutramax sent to Bioiberica S.A.U. a Purchase Order for 18,000 kilograms of chondroitin sulfate. *Id.* ¶ 5; *see* ECF 1-1 (the Purchase Order). Nutramax requested that Bioiberica S.A.U. ship the 18,000 kilograms in three installments of 6,000 kilograms each, at a unit price of $97.00 per kilogram, on January 4, 2018, February 5, 2018, and March 1, 2018. *Id.* The Purchase Order contained Nutramax's detailed sourcing specifications for the chondroitin sulfate, ECF 1-1 at 3-5, as well as Nutramax's proposed terms and conditions, *id.* at 6-8.

The Purchase Order's terms and conditions addressed modification of the Purchase Order:

> Any commercial terms on [Bioiberica S.A.U.'s] acceptance, quote, invoice, or other documents or communications are excluded and shall have no force or affect. No modification, amendment, or waiver of any terms herein shall be effective unless in writing and signed by both parties. The course of conduct between the parties may not alter the terms of the [Purchase Order] or these Terms and Conditions.

*Id.* at 6. The Purchase Order also specified that Bioiberica S.A.U. "shall not delegate all or any portion of its obligations under the [Purchase Order] and/or these Terms and Conditions nor assign any of its rights hereunder, without the prior written consent of NUTRAMAX." *Id.* at 8.

Bioiberica S.A.U. shipped the first installment on time, and Nutramax timely paid the invoiced amount, $95.95 per kilogram ($1.05 lower than the price specified in the Purchase Order). ECF 26, ¶ 6; *see* ECF 1-2 (Bioiberica S.A.U. documents evidencing the shipment, invoice, and payment). Bioiberica S.A.U.'s shipment and invoice documents contain no

additional proposed terms and conditions, other than a due date for Nutramax's payment.  ECF 1-2 at 2-5.

Bioiberica S.A.U. could not timely perform its obligation to ship the second installment of chondroitin by February 5, 2018.  ECF 26, ¶ 7.  Bioiberica Nebraska alleges that, to remedy this, Bioiberica S.A.U. assigned and delegated its contractual rights and obligations to Bioiberica Nebraska, who could satisfy the remaining shipments due under the original Purchase Order.[1]  *Id.* ¶¶ 8-10.  Bioiberica Nebraska alleges that Nutramax approved of this arrangement.  *Id.*

On February 28, 2018, Bioiberica Nebraska shipped a second installment of 5,875 kilograms of chondroitin sulfate due under the Purchase Order.  *Id.* ¶¶ 11-13.  The parties agreed that the omitted 175 kilograms would be included in the final installment.  *Id.* ¶ 12.  Bioiberica Nebraska's invoice for this second installment reflects a unit price of $97, as opposed to the $95.95 that Bioiberica S.A.U. charged for the first installment, for a total cost of $565,025.00.  ECF 1-3 at 2 ("the February, 2018 Invoice").  Nutramax did not promptly pay the invoiced amount.  ECF 26, ¶ 13.

Bioiberica Nebraska's February, 2018 Invoice contained a set of Terms and Conditions.  *Id.* at 3.  The Terms and Conditions section began with the following preface:

> THE FOLLOWING TERMS APPLY TO ALL SALES:  If Customer, for any reason disagrees with these terms and conditions the Customer must reject the goods in a commercially reasonable fashion, subject to a restocking charge.  Acceptance of the goods and/or use thereof shall constitute acceptance of the following terms and conditions and the waiver and the release of any terms and conditions not specifically set forth herein.

*Id.*  Two of the Invoice's terms dealt with terms set forth in a customer's purchase order:

---

[1] Nutramax assumes *arguendo*, for the purposes of this Motion only, that the Second Amended Complaint adequately alleges that Bioiberica S.A.U. assigned and/or delegated the Purchase Order to Bioiberica Nebraska.  ECF 40-1 at 5 & n.1; *see also id.* at 7.

3

4. To the extent that this order is covered by a prior written contract between Bioiberica Nebraska and the Customer, it is accepted on the terms and conditions in that contract and the terms and conditions express [sic] herein are not intended to modify, change, or supersede such prior contract. To the extent that this order is not covered by such a contract, this instrument contains all of the terms and conditions with respect to the sale and purchase of products named herein. . . .

5. The Customer's Purchase Order Number (P.O. No.) set forth above is utilized solely for the Customer's Convenience and internal business records. The use of this P.O. No. does not indicate any acceptance by Bioiberica Nebraska of the terms or conditions contained in the Customer's purchase order form (which terms and conditions are specifically rejected) and is in no way indicative of the actual sales agreement made between Bioiberica Nebraska and the Customer.

*Id.* The Invoice further discussed the consequences of a delinquent payment:

7. Payment terms are net thirty (30) days from invoice date unless otherwise agreed in writing. . . . Past due balances are subject to a late payment charge of 1 ½% per month, or the maximum amount permitted by applicable law whichever is less. . . . Buyer shall pay all reasonable costs, fees (including attorney[s'] fees) and expenses incurred by Seller in collecting monies due or to become due hereunder.

*Id.*

On March 16, 2018, Bioiberica Nebraska delivered to Nutramax 1,500 kilograms of chondroitin sulfate, representing a portion of the third and final installment of the Purchase Order. *Id.* ¶ 14; *see* ECF 1-4 at 2 ("the March, 2018 Invoice"). The March, 2018 Invoice similarly reflected a unit price of $97, and included the same Terms as the February, 2018 Invoice. ECF 1-4 at 2-3. Nutramax timely paid this invoice. ECF 26, ¶ 14.

On May 2, 2018, Bioiberica Nebraska delivered to Nutramax 4,500 kilograms of chondroitin sulfate, representing the third and final installment of the Purchase Order. *Id.* ¶¶ 14-15. Bioiberica Nebraska's invoice for this final shipment reflects a unit price of $97, for a total cost of $436,500. ECF 1-5 at 2 ("the May, 2018 Invoice"). The May, 2018 Invoice again contained the same Terms as the February, 2018 Invoice. *Id.* at 3. Nutramax failed to promptly

pay this invoice. ECF 26, ¶ 15. To date, the remaining 175 kilograms of chondroitin sulfate (deferred in February, 2018) have not been delivered. *Id.* ¶ 16.

Bioiberica initially filed its Complaint against Nutramax on October 10, 2018. ECF 1. The Complaint alleged that based on Nutramax's failure to pay the February and May, 2018 Invoices, Nutramax was liable to Bioiberica Nebraska for (1) the invoiced amounts of $1,001,525.00, (2) late fees on those invoiced amounts, accruing at a *per diem* rate of $493.90, and (3) Bioiberica Nebraska's reasonable attorneys' fees and costs incurred in this suit. ECF 1, ¶¶ 14, 18-19. On October 16, 2018, however, Nutramax remitted payment to Bioiberica Nebraska in the amount of $1,001,525.00, its principal obligation under the two invoices. ECF 26, ¶ 18. Nutramax did not, however, pay the claimed late fees. *Id.* ¶ 20. Accordingly, Bioiberica Nebraska filed an Amended Complaint, within the twenty-one-day grace period that Federal Rule of Civil Procedure 15(a)(1)(A) affords, to remove the claim for the principal amount, leaving only Bioiberica Nebraska's claim for late fees, attorneys' fees, and costs. ECF 8.

On November 19, 2018, Nutramax filed a Motion to Dismiss Plaintiff's Amended Complaint for Lack of Standing, or Alternatively for Failure to Name a Necessary Party. ECF 15. On May 23, 2019, Judge Russell issued a Letter Order granting Nutramax's motion. ECF 20. Judge Russell found that because Bioiberica Nebraska's Amended Complaint failed to allege that Bioiberica S.A.U. had assigned the Purchase Order to Bioiberica Nebraska, Bioiberica Nebraska did not have standing to sue Nutramax under the Purchase Order. *Id.* at 4. Judge Russell further held that, because Bioiberica Nebraska "d[id] not clearly identify and assert rights under another contract with Nutramax, it fails to state a claim against Nutramax." *Id.* Judge

Russell, however, declined to rule on whether Bioiberica S.A.U. could assign the contract, and whether Bioiberica S.A.U. was a necessary party. *Id.* at 4 n.10.

On June 11, 2019, Bioiberica Nebraska sought leave to file its Second Amended Complaint, "to include allegations that the Purchase Order was delegated and assigned by Bioiberica S.A.U. to Bioiberica Nebraska." ECF 21, ¶ 4. Nutramax opposed, arguing that Bioiberica Nebraska failed to allege an assignment in conformity with the Purchase Order, and that Bioiberica Nebraska could not seek its claimed late fees under the invoices. ECF 22 at 8-10. The Court ultimately granted the motion for leave to amend, finding that the allegations regarding the assignment to Bioiberica Nebraska were not futile, and that Nutramax's argument regarding the recoverability of late fees, attorneys' fees, and litigation costs under the invoices was better suited for determination on a motion to dismiss. ECF 24 at 6-8.

Shortly thereafter, on October 28, 2019, the parties submitted a joint motion to stay this case so that they could pursue settlement discussions, ECF 29, which this Court granted, ECF 30. The stay was lifted, per the parties' request, on June 2, 2020. ECF 38, 39. Nutramax's instant Motion followed.

## II.   LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d 435 at 440 (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v.*

*Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, a court is not required to accept legal conclusions drawn from the facts.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d 442, 450 (4th Cir. 2007).  However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

## III.   ANALYSIS

Nutramax seeks dismissal, with prejudice, of Bioiberica Nebraska's Second Amended Complaint, because the late fees and cost-shifting provision of the February and May, 2018 Invoices were not governing terms of the contract between Nutramax and Bioiberica Nebraska.  ECF 40-1 at 7-10.  Bioiberica Nebraska counters that it, Bioiberica S.A.U., and Nutramax executed a novation of the Purchase Order and its Terms and Conditions.  ECF 41-1 at 15-20.  Because of that novation, the argument goes, the Terms and Conditions set forth in the February and May, 2018 Invoices controlled, pursuant to section 2-207 of the Maryland Code's

Commercial Law Article. *Id.* at 20-26. As explained below, Nutramax's interpretation of the parties' contractual relationship is meritorious, under the facts alleged in the Second Amended Complaint.

### A. Bioiberica Nebraska's Complaint Fails as a Matter of Law, Under the Theory Alleged in the Second Amended Complaint

As an initial matter, the Court must first determine which state's law governs its analysis. Generally, in a diversity action such as this, this Court applies Maryland's choice of law rules. *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). In contract disputes, Maryland courts apply the *lex loci contractus* rule, which requires the Court to apply the law of the jurisdiction in which the contract was formed. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992). But Maryland courts will typically enforce a contract's choice-of-law clause, if one exists. *See Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 572 (1995). Here, however, the instruments that both parties contend served as the basis of their contract – the Purchase Order and the Bioiberica Nebraska Invoices – contain conflicting choice of law provisions. *Compare* ECF 1-1 at 8 (directing that Maryland law apply), *with* ECF 1-3 at 3 (directing that Nebraska law apply). Given that the crux of the instant dispute is which of these two instruments governs the parties' contractual relations, to accede to a choice-of-law provision within either instrument "puts the cart before the horse, as it is inappropriate to apply a term of the contract to the question of whether the parties agreed to the contract in the first place." *James v. Synovus Bank*, No. TDC-19-1137, 2020 WL 1479115, at *2 (D. Md. Mar. 26, 2020) (citations omitted). Thus, the Court must determine when, if ever, a contract was formed between the parties. Wherever "the last act necessary to make the contract binding occurs," that state's law will govern. *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490 (2002).

The parties do not appear to dispute that a contract was first formed between Nutramax and Bioiberica S.A.U. Indeed, the Second Amended Complaint alleges that after receiving Nutramax's Purchase Order, Bioiberica S.A.U. shipped the first allotment of chondroitin to Nutramax's facilities in Maryland, and invoiced that shipment at a rate lower than that which Nutramax had requested. ECF 26, ¶¶ 5-6. Nutramax thereafter accepted the shipment, and paid the invoiced amount. *Id.* ¶ 6. Under these circumstances, the Second Amended Complaint alleges the presence of a contract for sale between Nutramax and Bioiberica S.A.U., meaning that Maryland law controls. *See* Md. Code Ann., Com. Law § 2-204(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."); *id.* § 2-206(1)(b) ("An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods . . . ."); *Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 259 (4th Cir. 2000) (explaining that, under Maryland law, a purchase order acts as an offer, and a seller can accept the purchase order "by performance and delivery of the goods"); *Aura Light US Inc. v. LTF Int'l LLC*, Nos. GLR-15-3198, GLR-15-3200, 2018 WL 1378802, at *5-6 (same).

In fact, Bioiberica Nebraska's legal theory relies on the notion that Bioiberica S.A.U. and Nutramax had a valid contract, because the Second Amended Complaint alleges, at length, that Bioiberica S.A.U. assigned and delegated all rights and obligations under the Purchase Order to Bioiberica Nebraska. ECF 26, ¶ 8; *see also id.* ¶ 10 ("With the delegation and assignment in place and approved by Nutramax Manufacturing, Inc., Bioiberica Nebraska, Inc. set about performing under the Purchase Order . . . ."); *id.* ¶ 12 ("Bioiberica S.A.U.'s proposed delegation and assignment to Bioiberica Nebraska, Inc. of its obligations and rights under the Purchase

10

Order . . . was acceptable to Nutramax . . . ."); *id.* ¶¶ 13-15 (discussing Bioiberica Nebraska's subsequent deliveries with the following introductory phrase: "In accordance with the Purchase Order that had been delegated and assigned to it by Bioiberica S.A.U.").

While the terms "assignment" and "delegation" are often used interchangeably in contract law, those terms have legally significant differences. *See, e.g.*, *Petals Factory Outlet of Del., Inc. v. EWH & Assocs.*, 90 Md. App. 312, 318-19 (1992). As the Maryland Court of Appeals has explained, "An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment and does not confer upon the assignee any greater right than the right possessed by the assignor." *Univ. Sys. of Md. v. Mooney*, 407 Md. 390, 411 (2009) (quoting *James v. Goldberg*, 256 Md. 520, 527 (1970)). An assignee cannot, as a matter of law, hold greater rights than the assignor. *Webb v. Balt. Comm. Bank*, 181 Md. 572, 580 (1943) ("[O]bviously, the rights of the assignee are no greater than those of his assignor."). A delegation, however, merely involves one party's transfer of its obligation to perform a contractual duty to a third party. *Pub. Serv. Comm'n of Md. v. Panda-Brandywine, L.P.*, 375 Md. 185, 197-98 (2003).[2] In other words, neither an assignment nor a delegation amounts to the creation of a new contract, under Maryland law. Rather, contractual rights that the assignor held, or the contractual obligations that the delegator held, are transferred to the assignee or delegatee. Thus, without a valid underlying contract between Bioiberica S.A.U. and Nutramax, there could be no valid assignment or delegation.

---

[2] Parties may, by contract, prohibit each other from executing assignments and/or delegations. *See* Md. Code Ann., Com. Law § 2-210(1)–(2); *Pub. Serv. Comm'n*, 375 Md. at 198-99. While Nutramax intends to argue, in the future, that the terms of the Purchase Order barred assignments and that no assignment or delegation could have occurred, it assumes *arguendo* at this stage that an assignment and/or delegation did occur. ECF 40-1 at 5 & n.1. Thus, Bioiberica Nebraska's arguments regarding its ability to assign and/or delegate the Purchase Order, notwithstanding this provision, ECF 41-1 at 18-20, are immaterial at this time.

Assuming the truth of Bioiberica Nebraska's allegations that Bioiberica S.A.U. both assigned and delegated its rights and obligations to Bioiberica Nebraska, then, Bioiberica Nebraska is bound by the terms of the original contract between Bioiberica S.A.U. and Nutramax.  Whatever the full extent of the terms of that contract may be, there are no facts alleged to suggest that Bioiberica S.A.U. had the right to charge Nutramax a 1.5 percent fee for late payment, or to recover from Nutramax costs and attorneys' fees incurred in litigation between them.  The Purchase Order contains no terms providing Bioiberica S.A.U. this right, *see* ECF 1-1 at 6-8, and Bioiberica S.A.U.'s invoice contained no additional terms at all, save for a payment due date, ECF 1-2 at 2-5.  Thus, under the facts and legal theories of assignment or delegation alleged in the Second Amended Complaint, Bioiberica Nebraska has no plausible legal entitlement to late fees, attorneys' fees, or litigation costs arising from Nutramax's failure to timely pay the February and May, 2018 invoices.

Bioiberica Nebraska argues, however, that section 2-207 of the Commercial Law Article, coupled with Nutramax's timely payment of the March, 2018 Invoice, means that the Terms and Conditions of the February and May, 2018 Invoices became a part of the contract between the two.  ECF 41-1 at 20-26.  This argument has two fatal flaws.

First, courts overwhelmingly hold that section 2-207 of the UCC (which section 2-207 of Maryland's Commercial Law Article mirrors) only informs an inquiry into which term(s) contained in the parties' initial exchange of forms are actually part of the contract, and does not govern the later modification of a prior agreement. *See Reliable Automatic Sprinkler Co. v. Sunbelt Grp. L.P.*, No. 1:20-cv-2369-GHW, 2020 WL 4016758, at *8 (S.D.N.Y. July 16, 2020) ("Once a contract is formed, the parties may of course change their agreement by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel.  In order

to determine the terms of such change, [courts] look to UCC 2-208 and 2-209, not 2-207." (citation omitted)); *Am. Licorice Co. v. Total Sweeteners*, No. C-13-1929 EMC, 2013 WL 4396778, at *6 (N.D. Cal. Aug. 13, 2013) ("Courts have recognized that [section 2-207] is inapplicable where a contract has already been formed and additional terms are contained in a subsequent communication."); *Tra Indus., Inc. v. Valspar Corp.*, No. CV-10-025-JLQ, 2010 WL 2854251, at *4 & n.2 (E.D. Wash. July 19, 2010) (same); *Besicorp Grp., Inc. v. Thermo Electron Corp.*, 981 F. Supp. 86, 98 (N.D.N.Y. 1997) ("However, § 2–207 is inapplicable because that section only applies to the formation of a contract and is irrelevant once the parties have reached an agreement."); *Ariz. Retail Sys., Inc. v. Software Link, Inc.*, 831 F. Supp. 759, 763 (D. Ariz. 1993) ("Section 2-207 addresses situations in which various terms proposed by the parties in the offer and acceptances processes were not agreed upon before the contract was formed under section 2-207(1).  Section 2-209 picks up where section 2-207 leaves off—i.e., after the formation of the contract.  Section 2-209 thus sets forth rules for modifications of existing sales contracts.").  As demonstrated above, under the theory alleged in the Second Amended Complaint, Bioiberica Nebraska, as assignee and delegatee of Bioiberica S.A.U., assumed the rights and obligations of the contract Bioiberica S.A.U. originally entered into with Nutramax. Because the contract was already formed, section 2-207 is inapplicable.

Second, apparently recognizing this first flaw, Bioiberica Nebraska predicates its section 2-207 argument on there being a novation of the original contract between Bioiberica S.A.U. and Nutramax.  ECF 41-1 at 15-18 (explaining that a novation occurred); *id.* at 20 ("The *novation* created a new contractual relationship between Bioiberica Nebraska and Nutramax that entitled Bioiberica Nebraska to include additional terms in its invoices to Nutramax." (emphasis added)). However, the Second Amended Complaint fails to allege that a novation occurred.

Under Maryland law, a novation is "a new contractual relation made with intent to extinguish a contract already in existence." *E.g.*, *I. W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 7 (1975). To establish a novation, a plaintiff must allege sufficient facts that plausibly establish "(1) [a] previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one." *Leisner v. Finnerty*, 252 Md. 558, 564 (1969) (quoting *Dist. Nat'l Bank of Wash. v. Mordecai*, 133 Md. 419, 427 (1919)). Maryland courts "never presume[]" that a novation occurred; instead, "the party asserting it must establish clearly and satisfactorily that there was an intention, concurred in by all the parties, that the existing obligation be discharged by the new obligation." *I. W. Berman*, 276 Md. at 8. The intent need not be express, however, as the facts and circumstances surrounding the transaction, "as well as the subsequent conduct by the parties, may show such an acceptance as clearly as an express agreement." *Leisner*, 252 Md. at 565 (citation omitted). These requirements have been characterized as "fairly stringent." *Transam. Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 593 (D. Md. 2019) (quoting *Corp Healthcare Fin., Inc. v. BCI Holdings Co.*, No. CCB-05-3391, 2006 WL 1997126, at *7 (D. Md. July 13, 2006)).

Here, the Second Amended Complaint contains one lone allegation regarding a novation:

> In making the delegation and assignment of its obligations to perform and rights to payment under the Purchase Order, Bioiberica S.A.U. intended to and did effect a novation and a substitution of Bioiberica Nebraska, Inc. for Bioiberica S.A.U. as the other party to the Purchase Order, with Bioiberica S.A.U. having no further obligations or rights under the Purchase Order and with all obligations and rights vesting solely in Bioiberica Nebraska, Inc.

ECF 26, ¶ 9. This legally conclusory allegation, devoid of facts showing that all parties – including Nutramax – intended to novate the original contract between Bioiberica S.A.U. and Nutramax, is insufficient, as a matter of law, to plausibly demonstrate that a novation occurred.

Indeed, the rest of the allegations in the Second Amended Complaint only demonstrate that Nutramax accepted the assignment and delegation of the Purchase Order to Bioiberica Nebraska, not that Nutramax ever intended to novate its original agreement with Bioiberica S.A.U., and to enter into a new contract with Bioiberica Nebraska. *See, e.g.*, *id.* ¶ 10 ("With the delegation and assignment in place and accepted and approved by Nutramax Manufacturing, Inc., Bioiberica Nebraska, Inc. set about *performing under the Purchase Order* . . . ." (emphasis added)).

To the extent that Bioiberica Nebraska attempts to supplement these allegations in its Opposition, *see* ECF 41-1 at 9-12 (recounting the events underlying the instant suit by referring repeatedly to a "novated contract"), those efforts are improper. Indeed, Judge Russell already admonished Bioiberica Nebraska once for engaging in this practice in its opposition to Nutramax's first motion to dismiss the Amended Complaint. ECF 20 at 4 ("[Bioiberica Nebraska] is 'bound by the allegations contained in its [Amended Complaint] and cannot, through the use of motion briefs, amend [its pleading].'" (quoting *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998))). It should come to no surprise to Bioiberica Nebraska, then, that this Court will hold the same here. Scrutinizing only the factual allegations and legal theories Bioiberica Nebraska alleges in its Second Amended Complaint, this Court finds that Bioiberica Nebraska has not stated a valid claim for late fees, attorneys' fees, or litigation costs.

### B. Dismissal Without Prejudice is Appropriate

Nutramax, understandably, seeks dismissal of the Second Amended Complaint with prejudice. Dismissal with prejudice is appropriate if there "is no set of facts the plaintiff could present to support [its] claim." *Weigel v. Maryland*, 950 F. Supp. 2d 811, 826 (D. Md. 2013) (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)). Courts in this

District will also dismiss with prejudice if it appears that the plaintiff cannot satisfy the Rule 15 standards for obtaining leave to amend. *See Greer v. Gen Dynamics Info. Tech., Inc.*, No. PWG-18-1193, 2019 WL 764018, at *5 (D. Md. Feb. 21, 2019) (dismissing with prejudice "because another opportunity to amend would be futile"); *180S, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638-39 (D. Md. 2009) (dismissing without prejudice because of the lack of prejudice and bad faith, coupled with "the policy of the Federal Rules in favor of allowing the amending of pleadings"). Leave to amend is generally denied only if only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986). The decision to dismiss with or without prejudice lies in the trial court's discretion. *180S, Inc.*, 602 F. Supp. 2d at 638-39 (citing *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985)).

Bioiberica Nebraska has, to this point, employed a somewhat suspect litigation strategy. To be sure, it properly amended its Complaint as of right after receiving Nutramax's payment of the principal debt owed under the invoices. But when Nutramax challenged the Amended Complaint's allegations of Bioiberica Nebraska's contractual standing, Bioiberica Nebraska attempted to alter its legal theory through its opposition, and "allege," through briefing, that it was assigned and delegated the Purchase Order. *See* ECF 20 at 3-4. When granting Bioiberica Nebraska leave to file a Second Amended Complaint, the Court did not harbor suspicions regarding Bioiberica Nebraska's intentions, because its proffered amendments were geared towards those exact deficiencies that Judge Russell found in the Amended Complaint. *See id.*; *see also* ECF 26 at 1 (Preamble) ("Plaintiff has moved for leave to amend the Amended Complaint to Correct the deficiency in its allegations that prompted the Court to dismiss the Amended Complaint."). Now that Nutramax has had the ability to challenge the sufficiency of *those* allegations through a motion to dismiss, however, Bioiberica Nebraska has again changed

16

its theory of recovery, to state that the original Purchase Order was novated. *See* ECF 41-1 at 9-12, 15-18.

Certainly, a plaintiff who treats his complaint like the game of Battleship, moving the target across the board every time it suffers a fatal blow, acts in bad faith, and should not be entitled to leave to amend. *See, e.g.*, *Carter v. SNC-Lavalin Constructors, Inc.*, No. DKC-17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019) ("Bad faith generally involves changing legal theories and the belated presentation of facts which the pleader was already aware of in an effort to delay ultimate resolution," or "using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [and] to present theories seriatim in an effort to avoid dismissal[.]" (internal citations and quotations omitted)); *Walker v. Trans Union, LLC*, No. PWG-16-3926, 2017 WL 4786625, at *2-3 (D. Md. Oct. 24, 2017) ("When 'a party is granted leave to amend but fails to address the problem, that party should not be surprised when the court does not give it a third or fourth chance.'" (quoting STEVEN S. GENSLER, FED. R. CIV. P. RULES & COMMENTARY 288-89 (2011))). In this case, the line between Bioiberica Nebraska inartfully articulating its cause of action through its (improper) interchangeable use of legal terms like "assignment" "delegation" and "novation," *see Petals Factory Outlet*, 90 Md. App. at 318-19, and treating the complaint as a "moving target," *Carter*, 2019 WL 918382, at *3, is blurred. Ultimately, this Court cannot readily conclude that Bioiberica Nebraska is engaging in bad faith litigation, sufficient to dismiss this suit with prejudice.[3]

---

[3] Even assuming that Bioiberica Nebraska is able to allege, and prove, its entitlement to late fees, and *reasonable* attorneys' fees and costs, this Court strongly doubts that it will be reasonable to compel Nutramax to pay the attorneys' fees that Bioiberica Nebraska has incurred as a result of its repeated unsuccessful attempts to properly plead a claim for relief.

Nor does the number of opportunities that Bioiberica Nebraska has had to amend its complaint, at this stage, compel the Court to dismiss the case with prejudice.  While there is no "specific limit on the number of times a court may grant a party leave to amend," as noted previously, a court need not "keep giving a party repeated chances to amend." *Walker*, 2017 WL 4786625, at *3 (quoting GENSLER, *supra*, at 288-89).  Bioiberica Nebraska is beginning to run out of apple left to bite, but the Court is not entirely convinced that there are no bites left.  *See United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (upholding the district court's denial of leave to amend to a plaintiff who amended his complaint three times over the span of two years, because granting leave to amend again, "when Relator was on notice of the deficiencies before filing the most recent amended complaint, would undermine the substantial interest of finality in litigation and unduly subject Takeda to the continued time and expense occasioned by Relator's pleading failures" (footnote omitted)), *cert. denied*, 134 S. Ct. 1759 (2014); *Walker*, 2017 WL 4786625, at *3.  Technically, Bioiberica Nebraska has only been given two attempts at pleading its cause of action – the first amendment was one as of right, and was designed primarily to remove its claim for the approximately $1 million in payments owed.  The sufficiency of Nutramax's yet unarticulated *factual* allegations to establish a novation have not been scrutinized under a *Twombly-Iqbal* analysis.

This should not, however, be taken as an endorsement of Bioiberica Nebraska's novation theory.  Indeed, in light of the facts that have been alleged in the various iterations of the complaint to date, this Court has concerns about Bioiberica Nebraska's ability to prove that it and Nutramax intended to dissolve the first Purchase Order between Nutramax and Bioiberica S.A.U.  As noted, Maryland courts will not presume that a novation occurred; there must be facts showing that the parties intended novation.  *I. W. Berman*, 276 Md. at 8.  While there were some

relatively minor alterations to the delivery dates, generally speaking, there does not appear to be much of a legally significant difference between the original Purchase Order and the conduct of the parties here, in terms of the material terms of the contract. The unit price that Nutramax (eventually) paid mirrored the Purchase Order; the quantity shipped to Nutramax essentially mirrored the Purchase Order; and the product appears to be the identical product Nutramax originally ordered. Bioiberica Nebraska, however, will be given one final chance to bring forth all of the facts it has to support its theory that the original Purchase Order was novated by agreement of all parties.

As a final note, in its previous ruling, this Court discussed the "overlap" that exists between a court's review for futility under Rule 15, and for failure to state a claim under Rule 12(b)(6). ECF 24 at 4-6. The Court explained that while it "may be within a trial court's discretion to deny leave to amend when it is clear that a claim cannot withstand a Rule 12(b)(6) motion . . . it does not follow that every plaintiff seeking leave to amend their claims must demonstrate that his claims can withstand a Rule 12(b)(6) motion." *Id.* at 5-6. Given the procedural posture of this case, this Court will anticipate applying a Rule 12(b)(6) analysis to Bioiberica Nebraska's anticipated motion for leave to file a Third Amended Complaint, and an inability to survive that degree of scrutiny will result in the motion's denial.

### IV. CONCLUSION

For the reasons set forth above, Nutramax's Motion to Dismiss, ECF 40, is GRANTED, and the Second Amended Complaint is DISMISSED WITHOUT PREJUDICE. Bioiberica Nebraska may file a motion seeking leave to file a Third Amended Complaint within twenty-one (21) days of the Order accompanying this Memorandum Opinion. If no such motion is timely filed, the dismissal will be converted to a dismissal with prejudice.

Dated:  July 23, 2020                                                                        /s/
                                                                         Stephanie A. Gallagher
                                                                         United States District Judge