## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BIOIBERICA NEBRASKA, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Case No. 1:18-cv-03133-SAG** |
| | * | |
| **NUTRAMAX MANUFACTURING, INC.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM OPINION</u>

Plaintiff Bioiberica Nebraska, Inc. ("Bioiberica Nebraska") filed this lawsuit more than two and a half years ago, on October 10, 2018.  ECF 1.  Since that time, it has sought on numerous occasions to amend its Complaint to present new and alternative theories pertaining to its contract dispute with Nutramax Manufacturing, Inc. ("Nutramax").  This Court has issued a series of decisions in which it has allowed Bioiberica Nebraska to proceed on a theory of novation. Recently, however, it has otherwise denied Bioiberica Nebraska's attempts to amend its claims. Central to this particular opinion is Bioiberica Nebraska's Motion to File a Fourth Amended Complaint, ECF 60, which the Court denied on grounds that the sought-after amendment constituted bad faith, given Bioiberica Nebraska's repeatedly shifting legal theories and the unexplained, extremely belated discovery of key evidence that had apparently been in Bioiberica's possession from the start of litigation more than two years prior. ECF 72.  In that opinion, the Court indicated that "[i]n light of the finding of bad faith made herein, [it would] entertain a separate motion from Nutramax seeking reasonable costs and attorneys' fees incurred in opposing Bioiberica Nebraska's Motion for Leave to File Fourth Amended Complaint." *Id.* at 4.  Nutramax has now brought such a motion.  ECF 79.  Bioiberica Nebraska filed an Opposition, ECF 80, and

Nutramax replied, ECF 81.  I have reviewed the filings, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, Nutramax's Motion for Award of Attorneys' Fees will be granted, although the award will be reduced as compared to Nutramax's request.

## I.      Legal Standards

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citation and internal quotation marks omitted); *see Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 267 (4th Cir. 2019) (explaining that district courts "have the inherent power to order sanctions to preserve the integrity of the judicial process and to punish bad-faith conduct intended to delay or disrupt the course of litigation or to impede enforcement of a court order") (internal quotation marks omitted).   One of the sanctions available to a district court is an award of attorney's fees "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Goodyear*, 137 S. Ct. at 1186.  The Supreme Court has noted both that this inherent power to sanction by an award of fees "must be exercised with restraint and discretion," *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980), and that the set of circumstances justifying an award of attorneys' fees under a federal court's inherent power as a sanction for bad faith is narrow.  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013).  "Sanctions may be awarded only in the face of misconduct of some sort." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 146 (4th Cir. 2020).

Once a court has determined that attorneys' fees should be awarded as sanctions, it must next assess what fees, specifically, are reasonable to require the sanctioned party to pay.  The facts and circumstances to be considered in determining reasonable attorney fees include: (1) the time

and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee for like work; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) attorneys' fees awards in similar cases. *Erny on behalf of India Globalization Capital, Inc. v. MuKunda*, No. CV DKC 18-3698, 2020 WL 3639978, at *4 (D. Md. July 6, 2020) (citing *Allen v. Burke*, 690 F.2d 376, 379 (4th Cir. 1982)).

## II.    Analysis

### a.  Bad Faith

The crux of the dispute pertains to whether Bioiberica Nebraska's conduct is fairly deemed to be the sort of intentional "abuse of the judicial process" contemplated by *Goodyear* and related case law discussing sanctions for bad faith.  Bioiberica Nebraska suggests that it has only ever operated in good faith—it characterizes its attempt to file the Fourth Amended Complaint as a reasonable effort to "add facts its counsel had recently discovered but that were (or should have been) known to Nutramax from the inception of the case," and points out that the theory asserted in the proposed Fourth Amended Complaint was not actually new but was instead a return to the theory proffered in its original complaint.  ECF 80-5 at 1-2, 8, 26.  It argues that it has never "acted dishonestly and, therefore, in bad faith," but instead simply "misunderstood the factual background that resulted in the contract [at issue]."  *Id.* at 28.

The Court agrees that there is no evidence that Bioiberica Nebraska intentionally withheld the invoice that underpinned its Fourth Amended Complaint, nor is there any other evidence of

Bioiberica's dishonesty.  However, the bad faith analysis centers on whether the to-be-sanctioned party has "abused the judicial process," not necessarily whether it has engaged in the sort of dishonesty or suppression of evidence that Bioiberica disavows at length.  Here, it is not the invoice revelation and subsequent attempt to once again fundamentally alter its legal theory that, in a vacuum, constitutes an abuse of the judicial process.  Instead, it is Bioiberica Nebraska's conduct over the course of this litigation, with this extraordinarily belated discovery of the critical invoice as the capstone, that informs the Court's conclusion that it has acted in bad faith.

It is "well-acknowledged" that the inherent power of a court to levy sanctions extends to "abusive litigation practices."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980).  Here, put in its simplest terms, it was misconduct and an abuse of the judicial process to spend more than two years litigating this case, formulating *five* pleadings containing numerous distinct (and, in several instances, directly conflicting)[1] legal theories to keep the litigation alive, without making a serious and complete effort to understand the basic facts underlying its suit.  Prior to this most recent attempt to amend, Bioiberica Nebraska had three different opportunities to reformulate its claims and to reexamine its understanding of the facts.  What is more, the Court put Bioiberica Nebraska on notice that it was concerned about its "somewhat suspect litigation strategy" based on shifting legal theories and emphasized that it was "beginning to run out of apple left to bite."  ECF 43 at 16-18.  Despite this notice, Bioiberica Nebraska devised yet another theory directly contradicting its previous interpretations of the relevant contractual provisions.  ECF 39 at 1-3

---

[1] As the Court has previously noted, parties are within their rights to pursue contradictory theories in their pleadings.  *See* Fed. R. Civ. Proc. 8(d)(3).  However, as outlined in this opinion, Bioiberica Nebraska's casual relationship with the facts of their case goes beyond appropriate pleading of alternative theories, moving instead into the realm of "wasteful, dilatory tactic[s]" designed to avoid dismissal rather than to outline their good faith understanding of the facts.  *See Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015 (8th Cir. 2015).

(explaining that Bioiberica Nebraska now claimed that Nutramax's Terms and Conditions were not included in its Purchase Order, whereas it had argued the opposite in a previous proposed amended complaint, and noting further that its "new theory of delegation, assignment, and modification is entirely inconsistent . . . with [its] theory of novation").  In this way, it continued to "make the complaint a moving target . . . [and] to present theories seriatim in an effort to avoid dismissal," *Carter v. SNC-Lavalin Constructors, Inc.*, No. CV DKC 17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019) (internal quotations omitted), while simultaneously failing to take the task of crafting its pleadings seriously enough to identify what it now suggests is the dispositive document that wins it the entire case.[2]  Bioiberica Nebraska's lax approach to understanding its own case, all while repeatedly concocting new theories for Nutramax to respond to and the Court to review, constitutes bad faith because it has interfered with the Court's ability "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Goodyear*, 137 S.Ct. at 1186.

Bioiberica Nebraska, and its counsel in a sworn declaration, emphasize that its conduct regarding the newfound invoice was, at most, negligent, not intentional.  ECF 80-5 at 28-29, ECF

---

[2] In its Opposition, Bioiberica Nebraska attempts, for the first time, to explain why it only recently discovered the apparently critical invoice.  Following the Court's entry of a Scheduling Order in mid-October, "[t]o be in a position to comply with the discovery that was expected from Nutramax, Bioiberica Nebraska's counsel gathered and assembled details of the transaction from its inception."  ECF 80-5 at 13.  Prior to that, it claims, "Bioiberica Nebraska's counsel had no reason to inquire further" because it assumed Bioiberica S.A.U. billed the first shipment.  *Id.*  For a company that diligently formulated theory after theory to survive dismissal, no matter how tenuous or contradictory, this explanation does little to justify its conduct.  Bioiberica Nebraska's counsel had a duty to conduct a "reasonable inquiry under the circumstances," *see* Fed. R. Civ. P. 11(b), and the circumstances here—five pleadings over the course of more than two years, alongside a warning from the Court regarding the continued amendments and course of litigation strategy— demonstrate that the limited inquiry it describes was most definitely not reasonable.  Collecting the documents relevant to the transaction should have been an initial step, not one saved for several years later.

80-6 at 7.  While the failure to locate the relevant invoice may not have itself been intentional, the company's decision to pursue this litigation in the manner it has—propounding a series of ever-shifting legal theories without, apparently, ever verifying the factual basis for its claims—reflects a conscious course of action that ultimately abused the judicial process.  To forge ahead with its contract-based claims without first "assembl[ing] details of the transaction from its inception," ECF 80-5 at 13, was an intentional decision, as was Bioiberica Nebraska's repeated failure to reverse course during its numerous opportunities to amend after being alerted to their claims' deficiencies or in light of the Court's warning that it was pursuing a potentially suspect litigation strategy and was running out of chances.  As a result of these decisions, the parties and the Court have spent significant time, energy, and resources on assessing a series of pleadings and theories that Bioiberica Nebraska now suggests are functionally irrelevant to the resolution of this dispute, because they were all based on the wrong invoice.  This cavalier approach to its pleadings undermines the ability of the judicial process to "uncover the truth" and threatens its integrity by centering the inquiry on erroneous and wasteful side shows that could (and should) have been avoided.  *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  While this case may not involve the sort of outright dishonesty that cases like *Silvestri* involved, Bioiberica Nebraska cannot escape a finding of bad faith where its chosen approach to this litigation over an extended period of time ultimately had the same effect—"erod[ing] the validity of the process" by failing to diligently uncover the truth and instead focusing the Court's attention on matters immaterial to the disposition of the case.  *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993).

It is telling, too, that even now Bioiberica Nebraska repeatedly attempts to frame the belated invoice revelation as at least partially the fault of Nutramax.  ECF 80-5 at 9, 14-15, 26.

This strains credulity, to say the least.  Bioiberica Nebraska provides no plausible justification for why the Court should conclude Nutramax knew of the invoice's existence when Bioiberica Nebraska had no knowledge of it, despite it allegedly being the key to its entire legal theory. Regardless, even if Nutramax *did* know about the invoice, it is entirely the plaintiff's responsibility to formulate its facts and allegations at the pleadings stage of litigation.  Bioiberica Nebraska points to no case law suggesting that a defendant has an obligation to supplement or correct a plaintiff's erroneous or deficient pleadings, and the Court has similarly found none.  Ultimately this attempt to shift the blame exemplifies Bioiberica Nebraska's bad faith approach to this litigation so far, which has been to muddy the waters and prolong this dispute with tenuous theories instead of focusing on and ensuring the veracity of its allegations.

Awarding attorneys' fees as sanctions under the Court's inherent authority is undoubtedly for the "rare and exceptional case," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), and it is not a decision taken lightly.  The Court recognizes that this case does not fall within the mine run of "bad faith" cases, which often involve conduct like spoliation, disregard for court orders, and the like.  That said, the Court views this as a particularly unique circumstance in the same vein as that sort of conduct, given the protracted length of time elapsed, the numerous opportunities to amend granted to Bioiberica Nebraska, the company's failure to heed the Court's warnings regarding its litigation strategy, and, finally, the decision to engage in this course of litigation without ensuring that it had a full grasp of the facts in its possession underlying its claims, resulting in the late-discovered invoice and the subsequent filing of the Fourth Amended Complaint.  Given that protection against abuse of the judicial process lies at the heart of the bad faith analysis, the Court cannot avoid the conclusion that Bioiberica Nebraska's approach to this

litigation has violated this principle.  For these reasons, the Court concludes that Bioiberica Nebraska has acted in bad faith and that a sanction of attorneys' fees is appropriate.

### b.  Reasonableness of the Proposed Fees

"A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate." *Deigert v. Baker*, No. CIV. RDB-09-00392, 2010 WL 3860639, at *5 (D. Md. Sept. 30, 2010) (citing *Barber v. Kimbrell's, Inc.*, 557 F.2d 216, 226 n. 28 (4th Cir. 1978); *see also* Local Rule 109.2(b).  Nutramax has asserted that it incurred attorneys' fees in the amount of $10,952.60 in opposing Bioiberica Nebraska's motion for leave to file the Fourth Amended Complaint, providing timesheets, invoices, and an attorney declaration in support of this sum.  ECF 79-1 at 5-8, 79-2, 79-3, 79-4.  However, as Bioiberica Nebraska points out, the Local Rules provide guidelines for the award of attorneys' fees in Appendix B, which is a straightforward way to ensure that the award reasonably mirrors the prevailing rates of lawyers of comparable experience in the local market.  Based on Appendix B and the years of experience of the attorneys in question, the Court determines that the appropriate reasonable rates for purposes of this fee calculation are as follows: $400 per hour for Attorney Finnerty, $350 per hour for Attorney Nagle, and $275 per hour for Attorney Mikolinski.

With those rates in mind, the Court turns next to the individual time entries to calculate the total award.  Bioiberica Nebraska raises several meritorious complaints regarding these entries.  An award of sanctions cannot be made for attorneys' fees spent on any work other than the opposition to the motion generating the bad faith sanction.  *Goodyear*, 137 S. Ct. at 1186; *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 192 (2d Cir. 2000) ("[B]ad faith fee awards are 'limited to those expenses necessary to counter the losing party's bad faith.'").  A December 11, 2020 time entry for Attorney Mikolinski did not distinguish between time spent opposing the motion to amend and

time spent drafting a client update that addressed, in part, discovery and expert disclosures, which have no ostensible connection to the opposition.  Similarly, Attorney Finnerty billed 0.8 hours on December 8, 2020 for "Review of Maryland response," but there is no indication of what "Maryland response" is or how it connects to the bad faith filing here—while the Court thinks it may refer to a draft of the response in opposition to be filed here in Maryland, that is an assumption it cannot make since the burden is on Nutramax to prove its reasonable fees.  *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990).  As such, these entries will not be included in the fee calculation.

Bioiberica Nebraska's remaining contentions, however, fall short.  It cites no requirement that an attorney be admitted *pro hac vice* to bill time on a matter and have that time included in the fee calculation.  Similarly, it fails to support its contention that the use of three lawyers was excessive in responding to the motion to amend.  Lastly, its assertions regarding Attorney Mikolinski's 4.8 billed hours researching case law addressing bad faith and sanctions for frivolous filing are similarly off base, since those research topics were directly relevant to the motion to amend and, in fact, were the grounds upon which the Court denied that motion.

Given the foregoing rates and the surviving time entries, the reasonable award of attorneys' fees is $4,727.50.

**III.    Conclusion**

For the reasons set forth above, Nutramax's Motion for Award of Costs and Attorneys' Fees, ECF 79, is GRANTED, and it will be awarded $4,727.50 in fees.  A separate Order follows.

Dated:  May 7, 2021                                        /s/
_____
Stephanie A. Gallagher
United States District Judge